UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:03-CR-200-1-F
No. 5:10-CV-99-F

| | | |
|---|---|---|
| ANTOINE MYLES, Movant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, Respondent. | ) | |

This matter is before the court on the Government's Motion to Dismiss or for Summary Judgment [DE-70] as to movant, Antoine Myles's Motion to Vacate, Set Aside or Correct Conviction and Sentence [DE-62 & -66][1] pursuant to 28 U.S.C. § 2255. Myles has filed a response [DE-73] in opposition to the Government's motion, and the matter is ripe for disposition.

On February 2, 2004, Myles was sentenced to a term of 96 months imprisonment, to be followed by a 36-month term of supervised release as a result of his conviction for possessing ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. *See* Judgment [DE-36]. On September 8, 2004, Myles's sentence was reduced to 64 months imprisonment upon motion by the United States pursuant to Rule 35, FED. R. CRIM. P. *See* Motion and Amended Judgment [DE-39 & -40]. Myles's supervised release began on April 1, 2008.

On July 23, 2008, as a result of drug use, Myles's conditions of supervised release were modified to include two days in jail and required participation in the DROPS program. *See* [DE-43]. On June 19, 2009, Myles's supervising probation officer filed a motion to revoke Myles's supervised release. *See* Petition and Order [DE-43]. In support of the motion, Myles's

---

[1] Myles's initial § 2255 motion [DE-62] was filed on March 15, 2010. At the direction of the Clerk of Court, Myles's re-filed his motion on the correct forms on March 29, 2010. *See* [DE-66].

probation officer alleged, first, that on May 19, 2009, Myles was involved in a shooting in Cumberland County, North Carolina, in which he and the victim, Calvin McNeil, were shot. The investigation revealed that Myles possessed a weapon and shot Calvin McNeil. As a second ground for revocation, the probation officer alleged that on June 9, 2009, Myles admitted to his probation officer that he had "cooked some cocaine" for an individual on June 4, 2009.

Myles's hearing on the motion to revoke his supervised release was conducted before the undersigned on July 20, 2010. Upon advice of counsel, Myles entered a plea of "no contest." [2] The court received the testimony of Sgt. Nan Trogdon, Cumberland County Sheriff's Department, detailing the Government's allegations with regard to the shooting incident. *See generally* Transcript of Sgt. Trogdon Testimony [DE-61]. Defense counsel elicited on cross-examination that McNeil recovered from his injuries. *See id.* at p. 6. Myles did not offer evidence in dispute of Sergeant Trogdon's testimony or of the assertion that he confessed to cooking cocaine; he declined his opportunity to address the court. *See id.* at pp. 7-8.

Defense counsel proffered to the court information about Myles's family life, his employment, his medical condition, his education, and his significant family support, as evidenced by family members' attendance at the hearing. The Government argued for imposition of the most severe sentence possible, noting that, "if it were not for the statutory maximum in this case, his guidelines range would be, I think, 31 months at a minimum." *Id.* at p. 7. Finding as a fact that Myles violated the terms and conditions of his Judgment by criminal conduct and by possessing a controlled substance, the court revoked Myles's term of supervised release and ordered him to be imprisoned for a term of 24 months. *See* Amended Judgment [DE-58].

---

[2] At the time of the revocation hearing, there had been no adjudication on the state level of any charges against Myles stemming from the shooting.

In his § 2255 motion [DE-62 & -66], Myles claims his counsel was ineffective for not filing an appeal when directed to do so, and for not challenging or disputing the facts proffered by the Government at his revocation hearing. In response, the Government moved to dismiss the § 2255 motion or, in the alternative, for summary judgment. In support thereof, the Government filed the Affidavit of Myles's revocation hearing counsel, Mr. Walker, who related in detail his communications with Myles before and after the revocation hearing, and attached a copy of the form he uses to advises his clients of their right to appeal, bearing the notation "Antoine Myles does not want to appeal." *See* Exhibit B to Walker Affidavit, Attachment 1 to Government's Memorandum [DE-71].

After an exhaustive recitation of the law applicable to motions to dismiss, *see* Memorandum [DE-71], at pp. 3-6, and for summary judgment, *see id.* at pp. 7-10, the Government contends that Mr. Walker's affidavit is credible and supported by contemporaneous notes, while Myles's allegations are not. The Government also suggests that Mr. Walker's version of the events makes better sense, from a legal standpoint.

Pragmatically, there is no disputing the Government's rationale that, for Myles to have contested the factual predicate for the motion to revoke supervised release would have been very much ill-advised and that, on the record, an appeal of the judgment on revocation would have been futile. Responding to the Government's motion, however, Myles explains that, even if he told his lawyer after the revocation hearing that he did not want to appeal, he later changed his mind and wrote counsel a letter on July 29, 2009, directing him to file notice of appeal. *See* Myles's Affidavit [DE-74], at p. 4. He contends Mr. Walker should be deemed to have received the letter withdrawing Myles's agreement to forego an appeal. Otherwise, he reasons, jailers could destroy all prisoners' correspondence with their lawyers and rob them of their valuable constitutional rights. To support his contentions, Myles appended to his Affidavit a series of handwritten letters which he describes as rough drafts of all his correspondence concerning the

post-revocation proceedings. *See id.*, Attachment 1, Exhibits 2-8.[3] He further contends he is entitled to an evidentiary hearing at which he will prove Mr. Walker's advice to enter a "no contest" plea and not to appeal was incorrect, that he should be awarded a new hearing on the Government's motion for revocation, and that he should be permitted at that revocation hearing to refute the evidence underlying the criminal conduct allegations to which Sgt. Trogdon testified. In short, he wants a "do-over."

**Analysis**

At bottom, Myles claims that, but for the ineffectiveness of counsel during the revocation proceedings, he would have insisted on an evidentiary hearing at which he could vindicate himself on the shooting allegations, then prosecute an appeal if the court found he failed to do so. To survive the Government's motion to dismiss or for summary judgment, Myles "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). This court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As the *Strickland* Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

---

[3] One of the rough drafts Myles appended to his Affidavit [DE-74], Exhibit 5 & 5.1, corresponds by date and content with a May 20, 2010, letter contained in the court's personal files. Chambers staff responded to that letter, explaining the status of Myles's § 2255 motion. Also contained in Myles's personal chambers file is a September 14, 2010, letter from Myles not mentioned in Myles's affidavit. The September 2010, letter contains allegations consistent with those contained in his § 2255 motion. It does not appear that chambers responded to that letter.

> reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689.

Myles bears a heavy burden to overcome the presumption that counsel's conduct was within the wide range of reasonable professional assistance; the presumption is not overcome by conclusory allegations. He must " 'come forward with some evidence that his claim has merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.' " *McRae v. United States*, No. 3:08-cv-219-RJC/3:04-cr-223-RJC-DCK-2, 2011 WL 240500 (W.D.N.C. March 15, 2011) (quoting *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983)). Indeed, that burden is even heavier where the claim of ineffective assistance of counsel follows the entry of a guilty or "no contest" plea. In that event, the movant must show that but for counsel's unprofessional errors, a reasonable defendant would not have entered a no contest plea, but would have insisted on a full evidentiary hearing. *Cf. Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (addressing guilty plea).

Here, Myles does not rest on mere conclusory allegations. He has met the Government's evidentiary proffer with one of his own, attaching both his sworn statement and documents he contends support his position. The gravamen of Myles's response is that he followed his lawyer's advice not to contest the Government's evidence of criminal conduct underlying the motion for revocation but later determined that the advice was incorrect; and further, while he initially agreed that an appeal was not appropriate, he soon changed his mind and so notified his lawyer by way of a letter which his lawyer apparently did not receive. The critical facts – that he followed his lawyer's advice to plead "no contest" and, at least initially, not to file an appeal (both of which decisions he now regrets) are not at issue. There being no genuine issue of material fact, the only issue before the court is a legal one – whether, under the circumstances, Mr. Walker's advice fell below the applicable standard of reasonableness.

"It is a cardinal tenet of the Supreme Court's ineffective assistance jurisprudence that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007) (quoting *Strickland*, 466 U.S. at 690), *cert. denied*, 554 U.S. 925 (2008)). It is apparent from the record before this court that Mr. Walker's strategic advice not to contest the Government's evidence concerning Myles's alleged criminal conduct or to pursue an appeal of the judgment was made after serious consideration of the consequences, several of which Mr. Walker refers to in his Affidavit, Attachment 1 to Government's Memorandum [DE-71], to which reference herein specifically is made.

The court has carefully reviewed the record in this case, together with its own contemporaneous notes and the contents of the court's personal file for Myles. Having done so, and in light of all the circumstances in existence at the relevant times, the court finds that Mr. Walker's strategic advice to Myles was objectively reasonable and made after a thorough investigation of the law and facts available to him, with regard both to the "no contest" plea and the decision not to pursue an appeal of the judgment on revocation of supervised release. Having so found, the court concludes that Mr. Walker's performance in representing Myles fell well within the wide range of reasonable professional assistance.[4] In light of the court's finding and conclusion with regard to this "deficiency" prong of the *Strickland* test, the court need not address the "prejudice" prong.

For the foregoing reasons, the court finds that there exist no *genuine issues* of *material* fact necessitating an evidentiary hearing on Myles's § 2255 motion; the parties in their

---

4 Although the court has no reason to doubt the sincerity of Myles's change of heart following entry of the judgment, Mr. Myles's subjective post-hoc assessment of the merits of his decisions is not the standard by which this court must resolve the pending motions. For a full account of the specifics of the parties' positions, reference specifically is made to the parties' affidavits and exhibits filed in relation to this motion, together with the transcript of the revocation hearing at [DE-61].

respective motions, memoranda and exhibits have fully expounded on their positions and the factual bases therefor. As a matter of law, the Government is entitled to judgment in its favor.

**Certificate of Appealability**

Rule 11 of the Rules Governing § 2255 Proceedings provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined Myles is not entitled to relief and the Government is entitled to dismissal of Myles's petition, the court considers whether Myles nonetheless is entitled to a certificate of appealability with respect to one or more of the issues presented in his petition. A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate that reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

After reviewing the claims presented in Myles's § 2255 motion in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of Myles's ineffective assistance claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. The court declines to issue a certificate of appealability.

**Summary**

Accordingly, the Government's Motion to Dismiss or for Summary Judgment [DE-70], is ALLOWED and Myles's § 2255 motion is DENIED. This constitutes a final order, and the Clerk of Court is DIRECTED to close this case. A certificate of appealability is DENIED.

SO ORDERED.

This the 7th day of April, 2011.

                                            JAMES C. FOX
                                            Senior United States District Judge